UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                      :
ABLE MCTOOTLE,                                        :
                                      Plaintiff,      :
                                                      :        12 Civ. 3526 (JPO)
                  -v-                                 :
                                                      :        OPINION AND ORDER
MARYANNE GENOVESE, et al.,                            :
                                      Defendants.     :
                                                      :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

        Plaintiff Able McTootle brings this civil rights action, pursuant to 42 U.S.C. § 1983,

against Maryanne Genovese, Barbara Furco, and Edward Sottile (together, "Defendants").

Before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim, and,

in the alternative, on qualified immunity grounds.  For the reasons that follow, Defendants'

motion is granted.

I.      **Background**

        A.      **Factual Background**[1]

        Plaintiff Able McTootle ("Plaintiff" or "McTootle") is currently incarcerated at Great

Meadow Correctional Facility ("Great Meadow").  He was previously incarcerated at both Sing

Sing Correctional Facility ("Sing Sing") and Fishkill Correctional Facility ("Fishkill").[2]

---

[1] The following facts are taken from the Complaint (Complaint, Dkt. No. 1 ("Compl.")) and
McTootle's opposition to the motion to dismiss (Response on Letter, Dkt. No. 29 ("Pl.'s Opp.")),
which provides additional factual background.  For the purposes of this motion to dismiss, these
facts are presumed true.

[2] McTootle also discusses events that occurred at Five Points Correctional Facility in 2008.
However, to the extent that he premises his § 1983 claim on those events, the claim is time
barred.  *See Singleton v. City of New York*, 632 F.2d 185, 189 (2d Cir. 1980) ("Since Congress
has not established a federal statute of limitations for actions brought in federal court under

McTootle approximates December 2011 as the date of the Sing Sing events associated with his claim, and January 2012 as the date of those deriving from his experiences at Fishkill.

McTootle suffers from a keloid on the back of his head.  This keloid, a thick scar resulting from excessive growth of fibrous tissue, has been consistently infected over the course of McTootle's incarceration.  The keloid's condition has deteriorated significantly—so much so that it frequently leaks blood and pus.  McTootle claims that while incarcerated at Sing Sing, Facility Health Services Director Maryanne Genovese ("Genovese") and Nurse Administrator Barbara Furco ("Furco") improperly altered his medical status, transitioning him to self-care.  Whereas McTootle had previously gone to the medical clinic twice daily to receive dressing changes, Genovese and Furco altered this procedure, explaining to McTootle that the medical staff would henceforth provide him with dressings in his cell and that he would wrap his wound himself.

After McTootle was designated for self-care, Nurse Practitioner Monroe ("Monroe")— who is not a party to this case—visited McTootle in his cell and introduced herself as his new health care provider.  During this meeting, Monroe examined McTootle's keloid and told him that he would likely need to consult with a plastic surgeon outside the hospital to address his keloid.  Monroe also inquired of Genovese and Furco as to McTootle's keloid, and the two reiterated that he was designated for self-care.  As a result of this designation, McTootle's

---

§ 1983, we are instructed to apply the state statute of limitations most appropriate to § 1983 actions.  Following this mandate we have held that the three-year limitations period imposed by N.Y.C.P.L.R. 214(2), which applies to actions to recover upon a liability created by statute, governs § 1983 suits brought against individuals in federal courts in New York." (internal citations omitted)).  McTootle alleges that the events at Five Points occurred around March 17, 2008; accordingly, as his Complaint was filed in May 2012, claims arising from those events occurred more than three years prior to the lawsuit, and are thus not timely.  In later submissions, McTootle appears to clarify that he is not asserting claims against Five Points or any of its staff, but rather mentions Five Points to underscore the seriousness of his claims.

shower pass—which he had been issued to aid in caring for the wound every day—was revoked by Genovese.  And while Monroe recommended that McTootle be provided with a shower pass so that he could shower every day and clean his wound, Genovese denied this request.  In January 2012, McTootle was transferred to Fishkill, where the medical staff reiterated to him, presumably after consulting with the original designators—Genovese and Furco—that he was designated for self-care, as they were "following Sing Sing."  Despite McTootle's requests for help, the medical staff at Fishkill maintained the self-care classification, and also noted that McTootle was refusing medical care, presumably interpreting his resistance to self-care as a resistance to medical care generally.

McTootle alleges that self-care is not a workable option for him, as he cannot adequately dress the wound and is unable to see the back of his head to properly care for the keloid.  He is in constant, severe pain from the wound, and the keloid continuously swells.  McTootle alleges that the keloid is often infected, requiring him to take myriad antibiotics, which have little or no effect on McTootle's discomfort or the keloid's discharge, but do stave off swelling.  The infection in McTootle's keloid not only leads to pain, but also produces bloody and pus-like discharge.  Moreover, the keloid has grown in size since the events at Sing Sing and Fishkill, and it bleeds steadily.  In fact, McTootle's pillow is covered in blood and pus from his keloid.  It also appears from the Complaint that McTootle has seen a plastic surgeon outside the prison who, on at least one occasion, injected the keloid with a steroid.

McTootle has written Regional Medical Director Edward Sottile ("Sottile") several times detailing his struggles with self-care and the deterioration of his keloid.

**B.      Procedural Background**

McTootle filed the Complaint in this case on May 2, 2012.  (Dkt. No. 1.)  The Court

ordered service in August 2012 (Dkt. No. 11), and Defendants moved to dismiss the Complaint

on January 16, 2013 (Dkt. No. 25.)  On February 21, 2013, McTootle sent a letter, which the

Court construes as an opposition to Defendants' motion to dismiss, explaining the allegations in

his Complaint in greater detail.  (Dkt. No. 29.)  Defendants replied by letter on March 20, 2013.

(Dkt. No. 30.)

**II.     Legal Standards**

**A.      Motion to Dismiss**

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to

relief that is plausible on its face.'"  *Jean-Laurent v. Lawrence*, No. 12 Civ. 1502 (JPO), 2013

WL 1129813, at *3 (S.D.N.Y. Mar. 19, 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A claim has facial plausibility if "the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "*Pro* se status does not . . . excuse

a plaintiff from compliance with the pleading standards of the Federal Rules of Civil Procedure.

Nor does the latitude accorded a *pro* se litigant excuse him from meeting the requirements

necessary to respond to dispositive motions."  *Payne v. Oldcastle Precast, Inc.*, No. 10 Civ.

00887 (BSJ), 2012 WL 5873595, at *1 (S.D.N.Y. Nov. 19, 2012) (citations omitted).

Nevertheless, courts read *pro se* complaints liberally and interpret *pro se* pleadings as raising the

most compelling inferences they suggest.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## B.    Qualified Immunity

The doctrine of qualified immunity will shield state officials from liability incurred when performing "discretionary" job functions, so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).  "In this district, a right is clearly established if it has been recognized by the Second Circuit or the Supreme Court." *Jean-Laurent*, 2013 WL 1129813, at *3 (citations omitted).  Even where official conduct violates clearly established statutory or constitutional law, the accused officials will nevertheless remain immune from liability if their conduct was "objectively reasonable."  *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001); *accord Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). "Because the [reasonableness] test is an objective one, the officer's 'subjective beliefs about the [relevant conduct] are irrelevant.'"  *Cerrone*, 246 F.3d at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (2d Cir. 1987)).  While it is appropriate, under certain circumstances, to find qualified immunity at the motion to dismiss stage, in order to do so, "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions," the Court must ensure "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citations omitted).

## III.   Discussion

### A.    Eighth Amendment Claim

The Eighth Amendment provides that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend. VIII.  "That rule, applicable to the states through the Fourteenth Amendment, is violated by unnecessary and wanton inflictions of pain and suffering."  *Walker v.*

*Schriro*, No. 11 Civ. 9299 (JPO), 2013 WL 1234930, at *11 (S.D.N.Y. Mar. 26, 2013) (citations

omitted).  Accordingly, while "the Constitution does not mandate comfortable prisons," *Rhodes*

*v. Chapman*, 452 U.S. 337, 349 (1981), those incarcerated have a right to "basic human needs—

*e.g.*, food, clothing, shelter, medical care, and reasonable safety," *Helling v. McKinney*, 509 U.S.

25, 32 (1993) (citation omitted).  Prison officials, who are responsible for the general welfare of

those incarcerated under their watch, are considered to have violated the Eighth Amendment

when (1) the purported deprivation in which they participated is "sufficiently serious" as an

objective matter; and (2) they possessed a "sufficiently culpable state of mind."  *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994) (quotations and citations omitted).  Thus, in order to assert a

valid Eighth Amendment claim of inadequate medical care, not only must the purported injury

reflect an objectively serious medical condition, but the prison officials involved with the

medical issue must exhibit "deliberate indifference to [a prisoner's] serious medical needs."

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

    With respect to the objective prong of the analysis, in order to state a claim, a prisoner

must specify (1) that he was actually deprived of adequate medical care, and (2) "how the

offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely

cause the prisoner."  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citation omitted).

Insofar as "adequacy," a "prison official's duty is only to provide reasonable care.  Thus, 'prison

officials who act reasonably [in response to an inmate-health risk] cannot be found liable under

the Cruel and Unusual Punishments Clause[.]'"  *Id.* at 279-80 (internal citation omitted) (quoting

*Farmer*, 511 U.S. at 845)).  "[C]onversely, failing 'to take reasonable measures' in response to a

medical condition can lead to liability."  *Id.* at 280 (citations omitted).  Regarding the seriousness

of the harm, courts examine a series of factors, including "whether 'a reasonable doctor or

patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Id.* at 280 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). An inmate of course may show "condition[s] of urgency that may produce death, degeneration, or extreme pain," *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted), in order to satisfy this seriousness prong. But also, the requirement may nevertheless be met by "less serious denials [of medical attention] which cause or perpetuate pain." *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (quotations and citation omitted). Accordingly, the Court "will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than [it] would a sentence that required the inmate to submit to such pain." *Id.* Thus, when analyzing denial of medical treatment allegations, courts do not "require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do [they] require a showing that his or her condition will degenerate into a life-threatening one." *Id.* This seriousness inquiry, however, is significantly narrower "[i]n cases where the inadequacy is in the medical treatment given," *Salahuddin*, 467 F.3d at 280, as opposed to those cases where the allegation is solely a complete *denial* of medical care. For example, where inadequacy due to delay or interruption, rather than wholesale denial, is at issue, courts—in determining seriousness—will also scrutinize "the challenged *delay or interruption* in treatment rather than the prisoner's *underlying medical condition alone . . . ."* *Smith v. Carpenter*, 316 F.3d 178, 184-85(2d Cir. 2003) (emphasis in original).

As noted, a valid Eighth Amendment claim requires not only that the inadequate medical care be sufficiently serious in nature, but also that the prison officials' subjective intent, with respect to the deprivation, be sufficiently culpable so as to rise to a constitutional level. "It is

well established that not every claim made by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment; neither negligence nor medical malpractice is sufficient." *Walker*, 2013 WL 1234930, at *13 (citation omitted). Instead, to satisfy the subjective requirement of Eighth Amendment analysis, a plaintiff must allege conduct on the part of prison officials that is "repugnant to the conscience" or "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102-03 (quotations and citation omitted).

To establish that a prison official acted with a culpability beyond mere negligence, a prisoner must show that "the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d. Cir. 1997) (quoting *Farmer*, 511 U.S. at 834 (citation omitted)). This so-called "deliberate indifference" *mens rea* refers to the blatant disregard of a known and "excessive risk to inmate health or safety." *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quotations and citation omitted).

It is axiomatic that "[a]n inmate's disagreement with his treatment or a difference of opinion over the type or course of treatment do not support a claim of cruel and unusual punishment." *Alston v. Bendheim*, 672 F. Supp. 2d 378, 385 (S.D.N.Y. 2009) (citation omitted). Therefore, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *Sonds v. St. Barnabas Hosp. Correctional Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). The reasoning behind this limitation is clear, as such

"issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment," which requires a higher degree of culpability than thoughtlessness. *Id.* (citation omitted).

Here, McTootle alleges an Eighth Amendment violation based upon alleged inadequate medical treatment of his keloid. McTootle concedes that he is taking antibiotics to stave off infection, and notes that nurse practitioners visit his cell frequently to provide dressings and ointment; accordingly, his claim is best construed as one deriving from inadequate medical care, rather than a complete denial of such care, as some degree of care is clearly consistently provided to him. Defendants argue that McTootle fails to state a claim, as (1) negligence, which McTootle specifically cites in his Complaint, cannot, as a matter of law, satisfy the subjective element of the Eighth Amendment test; (2) his allegations reflect merely a non-actionable disagreement with treatment; and (3) he fails to provide a plausible inference that the problems with his keloid, namely the pus and blood leakage, were in any way caused by his mandated designation for self-care.

In determining whether the objective prong of the Eighth Amendment analysis is met, as discussed, the Court first examines whether McTootle was actually deprived of adequate medical care, and the way in which the "offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280 (citation omitted). In tandem, the Court examines the seriousness of the injury, determining whether it rises to a constitutional level. Here, McTootle alleges that his designation for self-care, together with Defendants' repeated refusal to help him dress his wound, constitutes a prima facie case of inadequate medical care.

As a threshold matter, McTootle's injury is objectively serious.  With respect to the seriousness of the injury, as discussed, the Court examines a number of factors, including the condition's effect on the prisoner's daily life, whether a reasonable medical professional would find the condition noteworthy, and the level of pain involved.  Here, McTootle has adequately described an objectively serious injury; he claims that his keloid subjects him to significant and severe pain, and that it frequently leaks blood and pus, so much so that his pillow is soaked with the keloid's discharge.  The pain and discharge associated with his keloid clearly affect McTootle's daily life, and the pleadings explicitly allege that various medical officials have found the condition noteworthy—including not only the unnamed outside plastic surgeon, but also Monroe.  *See Brock*, 315 F.3d at 163-64 (reversing district court's grant of summary judgment in favor of prison officials on the objective seriousness inquiry where inmate had alleged substantial pain associated with a deteriorating keloid).  Here, as in *Hemmings v. Gorczyk*, 134 F.3d 104, 1009 (2d Cir. 1998), McTootle "has alleged facts that could potentially show, upon further development, that his condition was sufficiently painful to satisfy the objective prong of the deliberate indifference test under the Eighth Amendment."  *Id.* at 109.

However, despite the objective seriousness of McTootle's injury, he has failed to state a claim of an Eighth Amendment violation of inadequate medical care, as Defendants' alleged failures to help McTootle with his dressing are neither unreasonable nor the cause of McTootle's injury, despite the fact that he has expressed an inability to dress the wound himself.  *But see Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (construing refusal to treat a serious cavity unless prisoner agreed to second tooth extraction of another rotting tooth as deliberate indifference within the meaning of the Eighth Amendment).  It is axiomatic that prison officials need only take "reasonable measures" to address an inmate's condition and the law mandates

neither comfortable prisons nor state-of-the-art medical care.  *See Williams v. Smith*, No. 02 Civ. 4558 (DLC), 2009 WL 2431948, at *7 (S.D.N.Y. Aug. 10, 2009) ("An inmate is not entitled to treatment by every available medical alternative as long as his treatment is reasonable." (citation omitted)).  And while that same law is not so lenient as to allow inaction and indifference in the face of a blatant cry for help, inmates do not have the right to mandate their own care, and McTootle's designation of self-care by Defendants appears to have been a reasonable medical decision, falling within prison officials' discretion to determine a course of treatment.  Moreover, it is unclear from the Complaint how these particular defendants are responsible for the treatment of McTootle in his current facility, or even perhaps at Fishkill.  In any event, it is not the self-care designation that causes the seriousness of McTootle's injuries, and while it arguably could constitute negligence to maintain him on this regimen when he has expressed an inability to dress his own wound, the provision of medicines and dressings, along with frequent nurse visits, fails to constitute inadequacy of medical care within the meaning of the Eighth Amendment.

Additionally, with respect to the subjective aspect of the Court's Eighth Amendment analysis, in order to state a constitutional violation, McTootle must not only sufficiently allege an objectively serious deprivation, but also plausibly suggest that Defendants engaged in such deprivation with the requisite subjective intent.  As discussed, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  *Estelle*, 429 U.S. at 104 (quotations and citation omitted).  This indifference is potentially "manifested by prison [medical personnel] in their response to the prisoner's needs . . . ."  *Id.* (footnote omitted).  "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  *Salahuddin*, 467 F.3d at 280 (citation omitted).  McTootle's Complaint fails to plausibly

suggest that Defendants acted with the requisite indifference in maintaining his designation for self-care and denying his and Monroe's request for a renewed shower pass for optimal keloid cleaning.  Even assuming that McTootle was not an appropriate candidate for self-care, Defendants' decision to designate him for such treatment at most evinces mere negligence.  Moreover, there is no allegation in the pleadings that Defendants ignored the discharge from the keloid.  As noted, McTootle alleges that he was provided with antibiotics to stave off infection, and was provided with bandages, conduct that is inconsistent with the requisite indifference for an Eighth Amendment claim.  *Compare Hemmings*, 134 F.3d at 108-09 ("[Plaintiff] has also advanced a colorable claim that the defendants wilfully disregarded his condition, which was easily observable, and which he complained about for almost two months before being referred to a specialist, who allegedly described his symptoms as 'classic' and expressed shock at the prison medical staff's failure to diagnose and treat the injury." (footnote omitted)).  The Court does not mean to suggest that the provision of antibiotics and dressings are *per se* reasonable responses to every medical ailment of an inmate.  *See, e.g.*, *id.* (reversing district court's dismissal of Eighth Amendment inadequate medical care claim, despite the fact that the plaintiff had received "some medical attention, including two x-rays").  However, there is no suggestion from the pleadings that such a response was so inadequate given the seriousness of McTootle's keloid as to display wanton indifference to his medical needs.  Here, it is clear that McTootle would have "prefer[red] a different treatment," namely one that involved a daily shower pass and visits to the infirmary for dressings; however, given that Defendants' treatment was a reasonable response to his condition, his designation for self-care "does not give rise to an Eighth Amendment violation."  *Chance*, 143 F.3d at 703 (citation omitted); *accord Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the

right to choose his medical treatment as long as he receives adequate treatment. . . . Accordingly, we have noted that the 'essential test is one of medical necessity and not one simply of desirability.'" (citations omitted)).

Accordingly, Plaintiff has failed to state a plausible Eighth Amendment claim based on inadequate medical care associated with his keloid.

## IV.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at docket entry number 25 and to close this case.

SO ORDERED.

Dated:  New York, New York
         September 27, 2013

_____
J. PAUL OETKEN
United States District Judge

13